IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–01781–EWN

In re:

ROBERT J. SLIFCO,

      Debtor.

LYNN HAHN-MARTINEZ,
Chapter 7 Trustee,

      Appellee/Cross-Appellant,

v.

LADONNA THERESA SLIFCO,

      Appellant/Cross-Appellee.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is an appeal from an order of the bankruptcy court (hereinafter the "Order") entered

in Debtor Robert J. Slifco's Chapter 7 proceedings, finding the joint tenancy between Debtor and

Appellant Ladonna Theresa Slifco had been severed prior to Debtor's death.  Appellee Lynn

Hahn-Martinez, Chapter 7 Trustee, cross-appeals portions of the Order.  Jurisdiction is premised

upon 28 U.S.C. § 158 (2006).

**FACTS**

On June 14, 2005, Debtor filed a voluntary petition for Chapter 7 bankruptcy.  (*In re Robert J. Slifco*, Bankr. Case No. 04–22705–EEB, Docket No. 1 [Voluntary Pet.].)[1]  Appellant, Debtor's wife, did not file for bankruptcy with Debtor.  (*Id.*)  Prior to filing for bankruptcy, Debtor and Appellant held an undivided interest in joint tenancy with right of survivorship in four properties in Custer County, Colorado (the "Properties").  (Adversary P. Docket, Docket No. 35 at 1 [Order].)  In his schedules, Debtor listed the Properties among his assets and did not claim them as exempt.  (*Id.*, Docket No. 35 at 2, 6 [Order].)

The bankruptcy court recounted the following facts regarding the parties' actions with respect to Properties after Debtor filed for bankruptcy and prior to his death:

> At the creditors' meeting, [Appellee] examined the Debtor as to the basis for the lien on the Properties held by the First State Bank of Hotchkiss (the "Bank").  She traveled to the Properties in July 2005.  Her inspection revealed a posted "for sale" sign on [one property].  Through subsequent conversations with the realtor listed on the sign, Carolyn Abraham of Watson Land Company, [Appellee] learned that [Appellant] had retained Ms. Abraham as a listing broker.  Ms. Abraham had been actively marketing the Properties. [Appellee] proposed co-listing the Properties with [Appellant], but [Appellant] refused.  Instead, [Appellant] wrote [Appellee] a letter asking her to refrain from interference with Ms. Abraham's activities, as [Appellant] wished to sell the Properties to satisfy the debt to the Bank. [Appellee] replied that [Appellant] and Debtor could not convey title to the Properties without [Appellee's] participation and, if [Appellant] did not wish to co-list the Properties, [Appellee] would retain her own broker.  But [Appellee] did

---

[1]I take judicial notice of the bankruptcy court's records in this case, which encompass documents in two different dockets: (1) the docket of the main bankruptcy case, case number 04–22705 (cited hereinafter as "Bankr. Docket"); and (2) the docket of an adversary proceeding arising out of the main bankruptcy case, case number 05–1923 (cited hereinafter as "Adversary P. Docket").  *See In re Winslow*, 186 B.R. 716, 721 (D. Colo. 1995) (taking judicial notice of the bankruptcy court's records and files).

> not immediately employ a broker.  Instead, in order to prevent a possible sale
> without her participation, she recorded notice of the Debtor's bankruptcy filing in
> the Custer County records.  She also moved to correct a misspelling of the
> Debtor's name in the bankruptcy court records so that anyone who wished to
> search for his bankruptcy case could find it.

(*Id.*, Docket No. 35 at 2 [Order].)

Appellant does not dispute Appellee's assertion that after Debtor filed his Chapter 7

petition, Debtor attempted multiple times to buy the Properties from the bankruptcy estate.

(Resp. Br. of Appellee and Cross Appeal Opening Br. at 4 [filed Jan. 18, 2007] [hereinafter

"Appellee's Resp."]; *see* Appellant's Reply and Resp. Br. [filed Feb. 5, 2007] [hereinafter

"Appellant's Reply"].)  Appellee refused to sell the Properties.  (Appellee's Resp. at 4.)

On October 1, 2005, while the bankruptcy case was still open, Debtor died.  (Adversary P.

Docket, Docket No. 35 at 2 [Order].)  Debtor and Appellant were separated at the time.  (*Id.*)

After Debtor's death, Appellee hired a realtor to sell the Properties.  (*Id.*)

On November 9, 2005, Appellee commenced an adversary proceeding against Appellant

seeking to have the Properties sold pursuant to 11 U.S.C. § 363(h), which generally allows

bankruptcy courts to authorize the sale of jointly-held property of a bankrupt debtor.  (*Id.*,

Docket No. 1 [Compl.].)  Appellant conceded all of the elements necessary for the authorization

of a sale under section 363(h), assuming Debtor's shares of the properties were still assets of the

bankruptcy estate.  (*Id.*, Docket No. 35 at 3 [Order].)  She defended against the sale solely on the

contention that, upon Debtor's death, all of his interest in the Properties passed to her by

operation of law as the surviving joint tenant.  (*Id.*)  The bankruptcy judge determined that the

joint tenancy had been severed prior to Debtor's death, reasoning that because both Appellant and

Debtor exhibited an agreement to sell the Properties and have the proceeds distributed, which is inconsistent with the right of survivorship, their intent was to terminate the joint tenancy. (*Id.*, Docket No. 35 [Order].)

On September 8, 2006, Appellant appealed the Order. (Notice of Appeal [filed Sept. 8, 2006].) On December 29, 2006, Appellant filed her opening brief, arguing that neither Debtor nor Appellant had displayed an intent to sever the joint tenancy. (Appellant's Br. [filed Dec. 29, 2006] [hereinafter "Appellant's Br."].) On January 18, 2007, Appellee responded to the appeal and cross-appealed, arguing Debtor's bankruptcy petition as well as Appellee's actions prior to Debtor's death severed the joint tenancy. (Appellee's Resp.) On February 5, 2007, Appellant filed her reply and response brief. (Appellant's Reply.)

## ANALYSIS

### 1.      Standard of Review

On a bankruptcy appeal, the district court is to review the bankruptcy court's conclusions of law *de novo*. *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399 (10th Cir. 1986); *see also In re Lacy*, 304 B.R. 439, 443 (D. Colo. 2004). The district court defers to the bankruptcy court's findings regarding the fundamental facts, reviewing them under a clearly erroneous standard. Fed. R. Bankr. P. 8013 (2007); *In re Hedged-Investments Assoc., Inc.*, 380 F.3d 1292,1297 (10th Cir. 2004).

### 2.      Evaluation of Claims

Appellant argues that the Order should be overturned because Debtor's filing for bankruptcy and Appellant's intent to sell the property were insufficient to sever the joint tenancy.

(Appellant's Br.)  Appellee counters that the bankruptcy court did not err in finding severance

because: (1) the bankruptcy judge did not find the Debtor's *filing* of bankruptcy dispositive of

intent, but properly found the fact that Debtor did not claim the Properties as exempt or indicate

any intent to retain the Properties evinced an intent to sever the joint tenancy; and (2) Appellant's

listing of the Properties with the express intent to pay off the debt against the Properties and

divide the proceeds with her husband and/or Appellee, as well as her separation from Debtor,

clearly showed an intent to sever the joint tenancy.  (Appellee's Resp. at 2–7)  Further, Appellee

cross-appeals, arguing: (1) the act of filing for Chapter 7 bankruptcy by one of two joint tenants

automatically severs a joint tenancy as a matter of law; and (2) Appellee took specific actions

prior to Debtor's death inconsistent with the continuation of Debtor's joint tenancy interest, from

which the bankruptcy court erred in failing to infer an intent to sever.[2]  (*Id.* at 7–14.)

      I find the bankruptcy court did not err in concluding that Debtor and Appellant's actions

were inconsistent with the right of survivorship and, thus, sufficient to sever the joint tenancy.  In

the alternative, I uphold the Order on grounds not relied upon by the bankruptcy judge.  *See*

*Dunham v. Kisak*, 1998 U.S. Dist. LEXIS 22660 (D. Ill. Dec. 16, 1998) (upholding bankruptcy

court's ruling on different grounds); *see also Tast v. Dean*, 182 Fed. App'x 748, 748–49 (10th

Cir. 2006) (affirming dismissal of a civil rights action on a different ground than the one relied

upon by the district court).  I find that, as a matter of law, a debtor's filing for Chapter 7

---

[2]Appellee, on cross-appeal, simply provides two additional arguments for upholding the Order.  (Appellee's Resp. at 7–14.)  These arguments are best understood as responsive to Plaintiff's plea for this court to overturn the Order, rather than as a cross-appeal.  I treat them accordingly.

bankruptcy automatically severs joint tenancy with respect to those properties not scheduled as exempt.  Because these two findings are more than sufficient to support the bankruptcy judge's Order, I do not address the parties' other arguments.

### a.      Joint Tenancy Primer

At the outset, I note the characteristics of a joint tenancy.  "[J]oint tenancy is a form of ownership in which each joint tenant possess the entire estate, rather than a fractional share." *Taylor v. Canterbury*, 92 P.3d 961, 964 (Colo. 2004).  Each joint tenant retains a right of survivorship, meaning that upon the death of one joint tenant, the entire estate passes on to the remaining joint tenant(s).  *Id.*  A tenancy in common, on the other hand, "is a form of ownership in which each co-tenant owns a separate fractional share of undivided property."  *Id.*  The principle distinction between these two forms of ownership is that tenant-in-common retains no right of survivorship.  *Id.*  Although once the presumptive form of concurrent ownership, joint tenancy has become somewhat disfavored in Colorado.  *Id.*  "Rather, tenancies in common are favored and the very existence of the joint tenancy is circumscribed by statute."  *Id.*  Further, joint tenancies are relatively easy to destroy, because a joint tenant has an "absolute right" to unilaterally terminate a joint tenancy, which operates to terminate the survivorship rights of all joint tenants and creates a tenancy in common.  *Id.* at 965.

Both parties agree with the bankruptcy court that the determination of whether Debtor and Appellant's joint tenancy was severed prior to Debtor's death is governed by *Taylor*. (Appellant's Br. at 6; Appellee's Resp. at 2; Adversary P. Docket, Docket No. 35 at 3–4

[Order].)  In *Taylor*, the Colorado Supreme Court eschewed the "four unities" test[3] for one focused on the intent of the parties, concluding that "acts inconsistent with the right of survivorship operate to sever the joint tenancy."  92 P.3d at 962.  The court must, therefore, look to the actions of the parties to determine their intent and expectations with regard to the maintenance or severance of joint tenancy.  *Id.*; *Bradley v. Mann*, 525 P.2d 492, 493 (Colo. Ct. App. 1974).

        **b.**     **Intent of the Parties**

                **1.**     **Preliminary Matter: Finding of Fact or Law?**

Appellant challenges the bankruptcy court's finding that Debtor's actions exhibited an intent to sever the joint tenancy.  (Appellant's Br.)  The parties dispute whether this determination is a finding of fact — and thus reviewed for clear error — or a finding of law — and thus reviewed *de novo*.  (*See id.* at 4; Appellee's Resp. at 1–2; Appellant's Reply at 3.)  Appellant concedes that the bankruptcy judge characterized the findings as factual, but argues — without citation to supporting caselaw — that because the bankruptcy court did not have to resolve any credibility issues, the findings were actually conclusions of law.  (Appellant's Br. at 4.)  Appellee counters that, in determining intent, the bankruptcy judge weighed the evidence and made findings based upon inferences from the facts before the court.  (Appellee's Resp. at 1–2.)

---

[3]Under the "four unities" test, a joint tenant had to destroy one of the "four unities" of time, title, interest, or possession to effect a severance of the joint tenancy.  *Taylor*, 92 P.3d at 962.

I agree with Appellee.  A bankruptcy court acts as a factfinder when it weighs or draws inferences from evidence.  *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985).  Here, in determining intent, the bankruptcy judge weighed the evidence and drew inferences from that evidence.  For instance, the bankruptcy judge inferred from Debtor's inclusion of non-exempt Properties on his schedule that Debtor would have anticipated that Appellee would sell these Properties and divide the proceeds among creditors.  (Adversary P. Docket, Docket No. 35 at 6 [Order].)  The bankruptcy judge concluded that the schedule, "therefore, indicate[d] an intent that the Properties would be administered by the bankruptcy trustee."  (*Id.*)  Similarly, the bankruptcy judge inferred from Appellant's active marketing of the Properties and her expressed desire that the Properties be sold to satisfy the debt to the Bank, that she intended to sever the joint tenancy. (*Id.*)  In weighing the evidence and making inferences regarding intent based on that evidence, the bankruptcy judge was clearly making findings of fact.  *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (noting determination of "discriminatory intent represents a finding of fact"); *Or v. Kennedy*, 456 U.S. 667, 675 (1982) (noting determination of intent of prosecutor is a finding of fact); *United States v. Burridge*, 191 F.3d 1297, 1302 (10th Cir. 1999) (noting that the district court's "ultimate conclusion regarding [the defendant's] intent to return the funds are findings of fact subject only to clear error review").  Accordingly, I review the bankruptcy court's findings regarding intent under the clearly erroneous standard.  This means:

> [i]f the [bankruptcy court's] account of the evidence is plausible in light of the record viewed in its entirety, [this court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence

differently.  Where there are two permissible views of the evidence, the factfinder's
choice between them cannot be clearly erroneous.

*Anderson*, 470 U.S. at 574.

### 2.    *Debtor's Intent*

Appellant argues that Debtor's scheduling of the Properties as non-exempt was

insufficient to show an intent to sever the joint tenancy.  (Appellant's Br. at 6–10.)  Appellant

explores a myriad of scenarios in which, even though a debtor filed for bankruptcy, his non-

exempt properties may not be administered by the estate — for instance if the trustee decides a

sale is not economical.  (*Id.* at 7–8.)  Appellant analogizes Debtor's actions to a joint tenant

voluntarily encumbering his interest with a deed of trust, which Colorado courts have held does

not sever the joint tenancy.  *E.g.*, *Taylor*, 92 P.3d at 966 n.7.  Appellant points out that although

"[i]t may develop that the joint tenant may default on the note, and a foreclosure may ultimately

cause a severance, [] the mere exposing of the property to that outcome does not destroy the joint

tenancy." (Appellant's Br. at 7.)  Similarly, the argument goes, although a debtor's scheduling of

non-exempt property may lead that property to be administered by the estate, and thus sever joint

tenancy, the mere exposure of the property to the potential for administration does not have the

same effect.  (*See id.*)

Appellant's reasoning is unavailing for three reasons.  First, a joint tenant who encumbers

his interest with a deed of trust can reasonably be assumed to act with the intention of avoiding

foreclosure, meaning something must go wrong in order for foreclosure to occur.  Contrarily, a

debtor who schedules non-exempt property must reasonably assume that property has a high

likelihood of being sold or otherwise utilized to satisfy creditors. *See* 11 U.S.C. § 363(h) (2006)

(permitting a trustee to sell property held in joint tenancy as of the petition date); *id.* § 364(d)(1)

(permitting trustee to use property of the estate for secured borrowing), *id.* § 547–9 (permitting

trustee to avoid transfers of property of the estate).  Second, in this particular case, Debtor had

every reason to believe the Properties actually would be administered by Appellee.  Appellant

does not deny that after filing his Chapter 7 petition, Debtor attempted multiple times to buy the

Properties from the bankruptcy estate, but Appellee refused to sell.  (Appellee's Br. at 3–5; *see*

Appellant's Resp.)  A court may reasonably infer that Debtor was, thus, aware that the Properties

were valuable assets of the bankruptcy estate in the view of Appellee.  Third, it is unclear to what

degree the rule that mortgaging property does not sever a joint tenancy is still viable in Colorado.

The *Taylor* court mentioned this rule when describing past applications of the four unities test,

explaining that "in lien theory states such as Colorado, merely mortgaging property does not

transfer legal title and is therefore insufficient to sever a joint tenancy."  92 P.3d at 966 n.7.

However the court concluded that, in contrast to cases applying the four unities test, the parties'

intentions to terminate the joint tenancy was sufficient to effect severance "despite the fact that no

property [was] conveyed or interests alienated."  *Id.* at 966.  Thus, it is wholly conceivable that,

after *Taylor*, mortgaging a property, if done with the intention of terminating a joint tenancy,

would have just that effect.  Although the facts as recounted by the bankruptcy court may permit

a court to reasonably conclude that Debtor did not intend to sever the joint tenancy, they certainly

permit the contrary conclusion.  Thus, I find the bankruptcy judge's finding regarding Debtor's

intent to terminate the joint tenancy is not clearly erroneous.

### 3.      *Appellant's Intent*

Appellant, who does not contest her stated intent to sell the Properties, contends that intent without effective action cannot, as a matter of law, sever a joint tenancy. (Appellant's Br. at 10–11.) Appellant is misguided. The bankruptcy court plainly found that Appellant's *actions*, namely listing the Properties for sale and retaining a broker to actively market the Properties with the express intent of satisfying the debt to the Bank, exhibited an intent to sever the joint tenancy. (Adversary P. Docket, Docket No. 35 at 6 [Order].) An intent to sell the Properties and divide the proceeds is plainly inconsistent with the right of survivorship and, thus, sufficient to terminate the joint tenancy. *Bradley*, 525 P.2d at 494. The bankruptcy judge did not err. Appellant offers no additional arguments to the contrary.

### c.      *Agreement Between Debtor and Appellant*

Based on the foregoing facts, the bankruptcy judge concluded that Appellant's and Debtor's actions exhibited an agreement to sell the properties and divide the proceeds, which was sufficient to terminate the joint tenancy. (Adversary P. Docket, Docket No. 35 at 7 [Order].) Appellant inexplicably contends that the bankruptcy judge found no agreement between the parties to sell the properties. (Appellant's Br. at 11.) In fact, the judge clearly stated that "both Debtor and [Appellant] exhibited an agreement to sell the Properties and have the proceeds distributed." (Adversary P. Docket, Docket No. 35 at 7 [Order].) Appellant does not explicitly argue this finding was in error. Nonetheless, I note that this finding was a plausible inference based on the "manner in which the parties [dealt] with the property." *Mann v. Bradley*, 535 P.2d 213, 214–15 (Colo. 1975) ("An agreement between the joint tenants to hold as tenants in

common may be inferred from the manner in which the parties deal with the property.")

Appellant openly tried to sell the Properties with the stated intent of dividing the proceeds.

(Adversary P. Docket, Docket No. 35 at 2 [Order].)  There is no evidence that Debtor attempted

to interfere with the sales or opposed them in any way.  Thus, I cannot say the bankruptcy judge's

determination that Debtor and Appellant's actions "exhibited an agreement to sell the properties

and have the proceeds distributed" was clearly erroneous.  (*Id.*)

Appellant goes on to argue that even if an agreement to sell the Properties and divide the

proceeds existed, it did not effect severance.[4]  (Appellant's Br. at 11.)  Appellant attempts to

support her argument with the following quotation from *Bradley*: "A provision for division of

proceeds in the event of sale is not inconsistent with an intent to retain the joint tenancy

relationship if the sale is conditioned on the subsequent agreement of the parties."  525 P.2d at

494.  As should be obvious, this quotation is inapposite.  In the instant case, the bankruptcy judge

found that, prior to Debtor's death, the parties had *already agreed* to sell the Properties; thus, the

sale was not "conditioned on the subsequent agreement of the parties."  (Adversary P. Docket,

Docket No. 35 at 7 [Order].)  In fact, *Bradley* explicitly states that an agreement to sell jointly

held property and divide the proceeds at some point in the future "indicates that neither party had

the ultimate expectation of receiving the other's interest in the property upon the party's death,

and the ownership of the property was thereby converted to a tenancy in common."  525 P.2d at

---

[4]It is beyond dispute that the bankruptcy judge's determination of what actions are
sufficient to effect legal severance of the joint tenancy is a question of law to be reviewed *de
novo.*

494. Accordingly, the bankruptcy judge did not err in finding Debtor and Appellant's agreement to sell the Properties severed the joint tenancy.

### d.    The Effect of a Debtor Filing for Bankruptcy

Even if the bankruptcy judge erred in concluding that the joint tenancy was severed by Debtor and Appellant's agreement to sell the Properties, Appellee argues the filing of the bankruptcy petition alone was sufficient to terminate the joint tenancy as a matter of law. I agree. (Appellee's Resp. at 7–12.) As the bankruptcy court pointed out, there is a split among courts regarding whether bankruptcy filing automatically severs a joint tenancy. *Compare, e.g.*, *In re Lambert*, 34 B.R. 41, 43 (Bankr. D. Colo. 1983) (holding under Colorado law the filing of a petition by one joint tenant severs the joint tenancy) *with Durnal v. Borg-Warner Acceptance Corp. (In re DeMarco)*, 114 B.R. 121, 125–26 (Bankr. N.D.W. Va. 1990) (holding under West Virginia law the filing of a Chapter 7 petition does not sever joint tenancy and, thus, upon death of debtor, property passed to joint tenant). However, as the bankruptcy court explained, "the debate between [these cases] is whether the bankruptcy filing operates as a conveyance from debtor to an estate, which destroys the unity of title and thereby severs the joint tenancy." (Adversary P. Docket, Docket No. 35 at 3 [Order].) Because the "four unities" test is no longer applicable in this circuit, the bankruptcy court found none of these cases dispositive, and — instead — considered only whether the parties' actions demonstrated an intent to sever the joint tenancy. (*Id.*, Docket No. 35 at 3–7 [Order].) Neither party nor this court found caselaw considering the effect of filing for bankruptcy on joint tenancy in the context of the intent test.

I hold that, as a matter of law, joint tenancy is destroyed when one joint tenant files for bankruptcy and fails to schedule the jointly held property as "exempt," because such an action is inconsistent with the right of survivorship.[5]  Pursuant to section 541 of the Bankruptcy Code, filing a petition for bankruptcy creates a bankruptcy estate.  11 U.S.C. § 541(a) (2006).  With few enumerated exceptions, the estate includes all legal or equitable interests of the debtor, including properties held in joint tenancy, at the commencement of the case.  *Id.* § 541(a).  Further, the debtor is required to surrender to the trustee "all property of the estate."  *Id.* § 521(4).  The trustee is endowed with the rights of a *bona fide* purchaser of a transfer of a debtor's interest in properties, including those held in joint tenancy.  *Id.* § 544(a)(3); *Sender v. Simon*, 84 F.3d 1299 (10th Cir. 1996).  The Bankruptcy Code specifically describes the means by which the trustee can administer jointly-owned property.  11 U.S.C. § 363 (2006).  Pursuant to section 363(h), the trustee may sell both the debtor's and co-owner's interest subject to certain conditions.  *Id.* § 363(h).  Before selling the jointly-held property, the trustee must give the non-debtor co-owner the first right of refusal.  *Id.* § 363(i).

I find the rights of the trustee and non-debtor co-owner to be analogous to those interests considered in *Mangus v. Miller*, 532 P.2d 368 (Colo. Ct. App. 1974).  In *Mangus*, the parties entered into a settlement agreement granting both former spouses the option to purchase the other

---

[5]This certainly does not mean that a debtor may protect all joint tenancies from severance simply by scheduling the property as exempt even when the debtor has no basis for doing so.  In such cases, the court must determine whether the property was properly scheduled.

spouse's interest in their property held in joint tenancy.  532 P.2d at 368–69.  The Colorado

Court of Appeals held that this option severed the joint tenancy, reasoning:

> Prior to the agreement, the parties owned the land as joint tenants and, as such, neither party had an absolute right to purchase the other party's interest in the property.  By the terms of the agreement, each party voluntarily surrendered some of his rights; that is, by the option agreement each was duty bound to sell to the other his or her interest in the property upon giving notice during the life of the option.  The right of either party to insist upon a sale to one or the other is wholly inconsistent with the continuance of a joint tenancy relationship.  The provisions of the settlement agreement are inconsistent with any presumed intent of the parties that the surviving ex-spouse . . . should succeed . . . to the deceased spouse's interest.

*Id.* at 369–70 (citation omitted).  Like the parties in *Mangus*, the trustee of a bankruptcy estate

has an option to sell estate property held in joint tenancy, under certain conditions, at any time.

11 U.S.C. § 363(h) (2006).  Similarly, if the trustee chooses to sell, the non-debtor joint tenant

has the option to purchase the estate's interest.  *Id.* § 363(i).  The right of one party to unilaterally

sell jointly-held property at any time, as well as the right of one party to insist upon the sale to

herself of the other party's interest, are plainly inconsistent with an intent to maintain the right of

survivorship.  *See Mangus*, 532 P.2d at 369–70.  Presuming the debtor intends the natural and

probable consequences of his actions, I find that when a debtor files a petition for bankruptcy, he

intends to sever the joint tenancy relationship over any property he fails to schedule as exempt.

Based on the foregoing, Debtor in this case severed the joint tenancy upon filing his petition for

Chapter 7 bankruptcy.

Appellant argues this holding: (1) "is contrary to the deeper policy of bankruptcy law

respecting the structure of state property laws;" and (2) "creates uncertainty with respect to

property titles." (Appellant's Br. at 9–10.)  Regarding Appellant's first point, my holding does

not avoid, but *applies* Colorado's state property laws.  As the analysis above shows, filing for

Chapter 7 bankruptcy evinces an *intent* to sever joint tenancy interests in any property scheduled

as non-exempt.  This analysis is exactly what is prescribed by the Colorado Supreme Court in

*Taylor*.  *See* 92 P.3d at 962.  Regarding Appellant's second point, that this ruling would require

an investigation into whether a joint tenant filed for bankruptcy in any matter requiring title

analysis of a property held in joint tenancy, the court is unpersuaded.  In the state of Colorado,

joint tenancy is a disfavored form of property ownership.  *Id.* at 964.  Accordingly, it has become

increasingly easy to sever a joint tenancy.  When the Colorado Supreme Court decided that the

relatively straightforward "four unities" test should be replaced with a more malleable "intent" test

and recognized a joint tenant's absolute right to sever unilaterally, certainly the effect was to make

severance *easier*.  In turn, title analysis for properties held in joint tenancy has become more

complicated, because there now are so many ways to sever the joint tenancy relationship.  If the

Colorado Supreme Court, in making severance easier, was not discouraged by any possible

uncertainty with respect to property titles, this court is equally unconcerned.

3.      ***Conclusion***

        Based on the foregoing, it is therefore ORDERED that the bankruptcy court's Order is

AFFIRMED.

        Dated this 14th day of June, 2007.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge